IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HOLLY MOLLET, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16-cv-0293-MJR-DGW |
| ) | |
| ST. JOSEPH'S HOSPITAL BREESE, ) | |
| OF THE HOSPITAL SISTERS OF THE ) | |
| THIRD ORDER OF ST. FRANCIS d/b/a ) | |
| HSHS ST. JOSEPH'S HOSPITAL ) | |
| BREESE, and HOSPITAL SISTERS ) | |
| HEALTH SYSTEM, ) | |
| ) | |
| Defendants. ) | |

**<u>MEMORANDUM & ORDER</u>**

REAGAN, Chief Judge:

Holly Mollet filed suit against St. Joseph's Hospital Breese, of the Hospital Sisters of the Third Order of St. Francis d/b/a HSHS St. Joseph's Hospital Breese and Hospital Sisters Health System alleging that she was discharged for retaliatory and discriminatory reasons after she exercised her rights under the Family Medical Leave Act and the Illinois Unemployment Insurance Act. According to Mollet, she was working at St. Joseph's Hospital in 2014 and 2015 when her hours were temporarily reduced, leading her to file for unemployment benefits. Despite opposition from the defendants, Mollet received unemployment benefits for the reduction in her employment income in both 2014 and 2015. In June 2015, Mollet had a serious health condition arise that necessitated her taking approximately six to eight weeks of FMLA leave. After she returned to work, Mollet's employment was terminated for "excessive

1

absences" on December 7, 2015. In Count I of her complaint, Mollet alleges that the defendants retaliated and discriminated against her for exercising her FMLA rights, alleging that the "excessive absences" that led to her termination were those she had as part of her FMLA leave. In Count II, she alleges that the stated basis of her termination, the "excessive absences," was a pretext and that she was, in fact, terminated for asserting and prevailing in her unemployment benefits claims.

On May 31, 2016, Defendants filed a motion for a more definite statement as to Count I and to dismiss, or for a more definite statement of, Count II. With respect to the requests for a more definite statement, the factual allegations of both counts are largely the same and suffer from a similar defect according to Defendants: they cannot discern to whom Plaintiff refers when she uses the term "defendants" in her complaint. They also argue that Mollet's complaint is too vague and ambiguous for them to determine whether she is alleging that one or both of the defendants was her employer at the time she was fired. Defendants also argue that Mollet's claim that she was discharged in retaliation for filing an unemployment insurance claim fails as a matter of law. They argue that the Illinois Supreme Court has never recognized a retaliatory discharge claim under the Unemployment Insurance Act (UIA) and, if given the opportunity to rule on the matter, would decline to allow such claims. Because Defendants seek a more definite statement of both counts if Count II is not dismissed, the Court first addresses the motion to dismiss Count II.

The common law tort of retaliatory discharge in Illinois requires that a plaintiff show that she was terminated by her employer in retaliation for actions she took and

that her termination violates a clearly mandated public policy. *Turner v. Memorial Med. Ctr.*, **911 N.E.2d 369, 374 (Ill. 2009)(citation omitted).** Defendants argue that Illinois law does not support a common law retaliatory discharge claim for a plaintiff alleging she was terminated for attempting to secure unemployment benefits. There is no Illinois Supreme Court addressing whether a retaliatory termination claim arises in connection with an employee who avails herself of the UIA's benefits, so the Court is tasked with making a predictive judgment as to how the Illinois Supreme Court rule if presented with the question. *See Allstate Ins. Co. v. Menards, Inc.* **285 F.3d 630, 635 (7th Cir. 2002).**

The parties agree that there is only one Illinois appellate case on point and that its holding is in Plaintiff's favor, *Fiumetto v. Garrett Enterprises*, **321 Ill.App.3d 946 (Ill. Ct. App. 2d. Dist. 2001).** The facts in *Fiumetto* closely mirror Plaintiff's allegations in this case. In *Fiumetto*, an employee filed for unemployment benefits after the availability of work and the number of hours the employee worked diminished. When her employer discovered that she had filed for unemployment benefits, she was terminated. Plaintiff suggests that the decision is thorough and well-reasoned. Defendants counter that *Fiumetto* is dated and not illustrative of how the Illinois Supreme Court would rule today because Illinois courts have consistently declined to expand the retaliatory discharge to claims other than those involving worker's compensation and whistleblowing.

Illinois is an at-will employment state, and an employer generally may discharge an employee for any reason at any time. *Kelsay v. Motorola, Inc.*, **384 N.E.2d 353, 360 (Ill. 1978).** Retaliatory discharge claims have been recognized as a narrow exception to

3

the general rule in two types of cases: those involving retaliation for filing a worker's compensation claim and those involving an employee terminated for reporting an employer's allegedly criminal activity. *See Michael v. Precisions Alliance Group, LLC*, **21 N.E.3d 1183, 1188 (Ill. 2014).** Courts in Illinois have not held that retaliatory discharge claims are limited to these two exceptions, and there is "no precise definition of what constitutes clearly mandated public policy." *Id.* Appellate courts in Illinois, with the exception of the *Fiumetto* Court, routinely refuse to extend the exception beyond the two categories.

The opinion in *Fiumetto* likens the Unemployment Insurance Act to the Workers' Compensation Act, applying and thoroughly examining a four-prong test to determine whether the UIA provides a clear mandate of public policy. Like the Worker's Compensation Act, the UIA is intended to benefit and protect workers, and "both Acts provide mechanisms for employees to seek compensation for matters related to their employment." *Fiumetto*, **321 Ill.App.3d at 955.** If an employee is fired for seeking unemployment benefits, it would worsen the injury that the Act aimed to prevent. *Id.* The *Fiumetto* Court reasoned that both Acts are remedial, and employers have a "financial incentive to dissuade an employee from going forward with a claim," under both Acts, making a private cause of action necessary. *Id.* **at 955-56.** Preventing an employee from bringing a retaliatory discharge claim under the UIA could allow an employer to "put employees in a position where they are required to choose between their jobs and their rights." *Id.* **at 956.**

Defendants argue that the Illinois Supreme Court would disagree with the *Fiumetto* Court because the Unemployment Insurance Act is more similar to the Illinois Minimum Wage Act (IMWA) and the Illinois Wage Payment and Collection Act (IWPCA), both of which do not allow for retaliatory discharge claims. *See McGrath v. CCC Info. Servs.*, **314 Ill.App.3d 431 (Ill. Ct. App. 1st Dist. 2000); and** *Wilke v. Salamone*, **404 F.Supp.2d 1040 (N.D. Ill. 2005).** Defendants suggest that the UIA is like the IMWA and IWPCA in that all three are economic in nature. The IMWA and the IWPCA aim to ensure that employees are compensated in accordance with wage laws, and courts in Illinois have held that "public policies associated with . . . economic regulation are less likely to be held sufficient to support claims of retaliatory discharge." *Leweling v. Schnadig Corp.* **276 Ill.App.3d 890, 894 (Ill. 1995).** This metric for evaluating whether a public policy rises to the level of a clear mandate, however, was in place when *Fiumetto* held that employees had a private cause of action for retaliatory discharge under the UIA.

The UIA is further set apart from the IMWA and IWPCA by the UIA's opening declaration of public policy in which legislators strongly advocated for the importance of the Act as public policy, calling "[e]conomic insecurity due to involuntary unemployment . . . a serious menace to the health, safety, morals and welfare of the people of the State of Illinois." **820 ILCS 405/100.** The declaration calls unemployment a "burden which now so often falls with crushing force upon the unemployed worker and his family" and points to the need for the UIA to "lessen the menace to the health, safety and morals of the people of Illinois, and to encourage stabilization of

5

employment." *Id.* The issue is where to draw the line between a public policy and a clearly mandated public policy that "strike[s] at the heart of a citizen's social rights, duties, and responsibilities." *McGrath*, 314 Ill.App.3d at 440 (citations omitted). The only Illinois court to analyze whether the UIA espouses a clearly mandated public policy held that it does. Given the statutory language and the support of the only Illinois case on point, the Court **FINDS** that Plaintiff's complaint alleges a plausible cause of action for retaliatory discharge and **DENIES** the motion to dismiss Count II.

Defendants indicate that they cannot properly respond to Plaintiff's complaint without a more definite statement of the allegations in both counts. A complaint must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555 and quoting Fed. R. Civ. P. 8(a)(2)). A reviewing court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 677-78). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level. *Id.*

6

Motions for a more definite statement are governed by Federal Rule of Civil Procedure 12(e), which allows a party to seek a more definite statement where a "pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a response." Motions for a more definite statement "are generally disfavored, and courts should grant such motions only if the complaint is so unintelligible that the defendant cannot draft a responsive pleading." *Moore v. Fid. Fin. Servs., Inc.*, **869 F.Supp. 557, 559-60 (N.D. Ill. 1994).** Rule 12(e) motions should not be used as "a substitute for the . . . normal discovery process." *Metso Paper, Inc. v. Enerquin Air, Inc.*, **No. 06-C-1170, 2007 WL 486635, at \*5 (E.D. Wis. Feb. 12, 2007).**

Plaintiff's complaint is not so unintelligible as to prevent Defendants from responding to the allegations. The complaint provides notice that Plaintiff believes her discharge was in retaliation for taking FMLA leave and for seeking and securing unemployment benefits. The complaint provides dates and a factual framework explaining why Mollet believes her termination was retaliatory. The factual allegations referring to the defendants jointly as "Defendants" or "Defendant" do not render Mollet's complaint so unintelligible that it prevents Defendants from responding "even with a simple denial, in good faith or without prejudice to himself." *Vician v. Wells Fargo Home Mortgage*, **No. 2:05-CV-144, 2006 WL 694740, at \*9 (N.D. Ind. Mar. 16, 2006)**. The plaintiff argues that she is not in a position to know the corporate structure of the defendants' organizations or the role that each defendant played in the process of her termination without conducting discovery. A more definite statement is not

required in order to allow the defendants to answer the complaint and will not be ordered as a substitute for questions best answered by conducting discovery. Accepting her well-pleaded factual allegations as true and drawing all inferences in her favor, Plaintiff's complaint satisfies the pleading requirements of Rule 8.

For the reasons stated above, Defendants' motion for a more definite statement as to Count I and to dismiss Count II (Doc. 18) is **DENIED**. This case remains set for final pretrial conference on June 30, 2017, and jury trial on July 10, 2017.

 **IT IS SO ORDERED**.

DATED: March 17, 2017

*s/ Michael J. Reagan*
MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**